1

2

3                                                          O

4

5                                              **JS-6**

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   AYLIN LA FLEUR, et al., )    Case Nos.
                             )
12              Plaintiffs, )     **EDCV 13-00398-VAP (OPx)**
                             )    LACV 13-01960-VAP (OPx)
13        v.                 )
                             )    **ORDER Granting Motion for**
14   MEDICAL MANAGEMENT      )    **Final Approval of Class**
     INTERNATIONAL, INC.,    )    **Action Settlement**
15   etc.,                   )
                             )    **[Motion filed on May 14,**
16                           )    **2014]**
     MICHAEL CAMPBELL, et    )
17   al.,                    )
                             )
18              Plaintiffs   )
                             )
19        v.                 )
                             )
20   MEDICAL MANAGEMENT      )
     INTERNATIONAL, INC.,    )
21   etc., et al.            )
                             )
22              Defendants. )
     _____ )
23

24       Before the Court is an unopposed Motion for Final

25   Approval of Class Action Settlement filed by Plaintiffs

26   Aylin La Fleur and Michael Campbell ("Plaintiffs").

27   ("Final Approval Motion") (Doc. No. 42).  The matter came

28   before the Court for hearing on June 23, 2014.  After

1  consideration of the papers filed in support of the
2  Motion, the Court GRANTS the Final Approval Motion and
3  APPROVES the settlement.

4

5                    **I. BACKGROUND**

6  **A.   Factual Background**

7       Plaintiffs were employed as "Practice Managers" at
8  two Banfield Pet Hospitals in southern California.
9  Banfield Pet Hospitals are operated by Defendant Medical
10 Management International, Inc. ("MMI").  Plaintiffs filed
11 two separate class action complaints,[1] asserting
12 violations of California labor law and alleging that MMI
13 did not adequately compensate them for work done in
14 excess of eight hours and work done on weekends, and
15 deprived them of rest and meal breaks.

16

17 **B.   Procedural History**

18      On July 11, 2013, Class Counsel for Plaintiffs filed
19 a Notice of Settlement, requesting ninety days to
20 complete the settlement and file a motion for preliminary
21 approval.  (Doc. No. 29.)  Plaintiffs filed a Motion for
22 Preliminary Approval of Class Action Settlement
23 ("Preliminary Approval Motion") on October 28, 2013.
24 (Doc. No. 33.)  The Court, after a hearing on January 6,

25 _____

26      [1]   On April 24, 2013, the Court consolidated La
   Fleur's case with Campbell's.  (See Case No.
27 5:13-cv-00398-VAP-OP, Doc. No. 22.)  All further
   references to the docket are to case no.
28 5:13-cv-00398-VAP-OP, unless otherwise noted.

                          2

1  2014,[2] granted preliminary approval of the proposed

2  settlement with a change to the class period -- as per

3  the agreement of the parties -- and a clarification to

4  the Claim Form making it clear that $3,750 would be paid

5  out of the settlement funds to the Labor and Workforce

6  Development Agency.  (See Doc. Nos. 39 (Minutes), 40

7  ("Preliminary Approval Order").)

8

9  **C.  Settlement Terms**

10     The Settlement Agreement requires MMI to pay a

11  maximum total settlement sum of $535,000.  (Final

12  Approval Motion at 1; Declaration of David Spivak in

13  Support of Motion for Preliminary Approval of Class

14  Action Settlement ("Spivak Preliminary Decl." (Doc. No.

15  33-2)) Ex. 1 ("Settlement Agreement") at II.P.)  The

16  total settlement sum would be used to satisfy: (i)

17  reasonable attorney's fees, not to exceed 25% of the

18  maximum settlement amount or $133,750.00; (ii) actual

19  litigation costs, not to exceed $10,000; (iii) reasonable

20  fees and expenses of the claims administrator, Simpluris,

21  Inc., not to exceed $8,000; (iv) reasonable enhancement

22  awards to the named plaintiffs, up to $15,000 per named

23  plaintiff for a total of $30,000; (v) civil penalties in

24  the amount of $3,750 payable to the Labor and Workforce

25

26     [2]  The Court issued a minute order preliminarily
27  approving the class action settlement on January 10, 2014
   and issued an order approving an updated class
28  notification form and notice schedule on January 27, 2014
   (Doc. No. 41).

1 Development Agency ("LWDA"); and (vi) the remainder of
2 $349,500 distributed to class members. (Id.)

3

4      The parties maintained that payments to each
5 individual class member would be different, depending on
6 length of service and other factors, and therefore
7 proposed the following formula for determining
8 compensation: the amount payable to each class member
9 will be based on a percentage of the total number of work
10 periods of the Class. (Preliminary Approval Motion at
11 20.)  For example, if class members as a whole submit
12 claims totaling 2000 pay periods, and an individual Class
13 member worked for 20 of those pay periods, her or she
14 would be entitled to 20/2000, or 1% of the Maximum
15 Distributable Amount, provided that he or she submitted a
16 valid Claim Form. (Id.)

17

18      For illustrative purposes, if each member of the
19 Class participated and each had an equal number of pay
20 periods to claim, the net payment to each member of the
21 Class would be 349,500/107, or approximately $3,266.

22

23 **D.   Settlement Procedure**
24      **1.   Notice to Class Members and Number of Claims**
25           **Received**
26      The parties followed the process for providing notice
27 approved in the Preliminary Approval Order. (Final

28

1    Approval Motion at 7; <u>see also</u> Declaration of Mary

2    Butler[3] ("Butler Decl." (Doc. No. 42-6)) ¶¶ 2-12.)  Of

3    the 124 identified class members, 86 valid claims were

4    received, or 69.35% of the possible settlement class.

5    (Butler Decl. ¶ 11.)  Those 86 claims accounted for 79%

6    of the net settlement amount.  (<u>Id.</u> ¶ 12.)  The average

7    payout to class members is $3,065.56 and the highest

8    payment to any individual class member is $7,402.02.

9    (<u>Id.</u>)  No class member has sought to be excluded from the

10   settlement or has filed an objection.  (<u>Id.</u> ¶¶ 13-14.)

11

12       **2.   Claim Administration**

13       According to the Claim Form and Notice of Settlement

14   approved by the Court in the Preliminary Approval Order,

15   in order to receive payment a Class member was required

16   to complete and submit a Claim Form to the settlement

17   administrator by a April 22, 2014.  The Notice of

18   Settlement also provided Class members the opportunity to

19   opt out, object, or do nothing.

20

21       The parties proposed that within twenty business days

22   of entry of preliminary approval, MMI would provide the

23   Simpluris with a database "containing the name, last

24   known address, telephone number, encrypted social

25   _____

26       [3]    Butler is a Case Manager for Simpluris, Inc.
     ("Simpluris"), the claims administrator retained for this
27   action.  (Final Approval Motion at 1.)  The Court
     previously approved $8,000 for claims administration.
28   (Preliminary Approval Order at 19.)

security number, Individual Pay Periods Worked of each
Settlement Class member, and Total Pay Periods Worked of
all Settlement Class members." (Settlement Agreement at
V.A.)  Upon receipt of this information, Simpluris was to
obtain updated forwarding addresses from the U.S. Postal
Service, and within ten business days of receipt of this
updated information, Simpluris was to mail the Notice of
Settlement to proposed class members.  (Id. at V.B)

    After Notices of Settlement were mailed, the
settlement class had sixty calendar days to respond and
mail Claim Forms or opt-out requests.  (Id. at II.I.)
Should any mail be returned as undeliverable, Simpluris
was required to make a second mailing, and the deadline
to respond and submit a Claim Form would be extended for
fifteen days or seventy-five days total from the date of
the first mailing.  (Id.)

    The parties followed this schedule and Simpluris
mailed these notices in compliance with the Preliminary
Approval Order.  (See generally, Butler Decl.)

## II. LEGAL STANDARD

    Parties seeking class certification for settlement
purposes must satisfy the requirements of Federal Rule of
Civil Procedure 23 ("Rule 23").  Amchem Prods., Inc. v.
Windsor, 521 U.S. 591, 620 (1997).  A court considering

such a request should give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." Id.

Under Rule 23(a), in order to bring a class action, a plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

In addition to these requirements, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action. Where a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The

7

1   matters pertinent to these findings include: (A)
2   the class members' interests in individually
3   controlling the prosecution or defense of separate
4   actions; (B) the extent and nature of any
5   litigation concerning the controversy already
6   begun by or against class members; (C) the
7   desirability or undesirability of concentrating
8   the litigation of the claims in the particular
9   forum.[4]
10
11  Where "the parties reach a settlement agreement prior
12  to class certification, courts must peruse the proposed
13  compromise to ratify both the propriety of the
14  certification and the fairness of the settlement."
15  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).
16
17                      **III. DISCUSSION**
18  **A.  Class Certification**
19      Based on the showing made by the Plaintiffs in
20  support of the Motion for Preliminary Approval and the
21  Motion for Final Approval, and as discussed more fully in
22  the Preliminary Approval Order, the Court finds the
23  parties have met their burden as to the prerequisites for
24  class certification set forth in Rule 23(a) and (b)(3).
25
26  _____
27      [4]   The Court need not consider a fourth factor –
    the likely difficulties in managing a class action – in
28  the context of a class action settlement.

                              8

Specifically, the Class includes 124 current and former employees and is therefore so numerous that joinder is impracticable.[5] (Final Approval Motion at 7; Preliminary Approval Order at 6.)  As to commonality, the Class is defined as Practice Managers employed at Banfield Hospitals from November 27, 2008 through October 5, 2013.  (Preliminary Approval Motion at 10-11; Preliminary Approval Order at 7; Settlement Agreement at II.M, II.U.)  Questions about whether MMI required its Practice Managers to work without proper compensation for overtime, weekend pay, or if they were deprived of breaks would be common to every member of the Class.  As to typicality, the facts common to the proposed class create liability for claims that are typical to the Class -- violations of the California Labor Code and related laws and regulations.  (Preliminary Approval Motion at 11; Preliminary Approval Order at 8-9.)

As to adequacy of representation, Class Counsel is experienced and capable of fairly and competently representing the interests of the Class.  (See Preliminary Approval Order at 9-10 (discussing qualifications of Class Counsel and previous work done on this case).)  The Settlement Agreement notes that the Plaintiffs and MMI believe the settlement to be "fair,

---

[5]   The Preliminary Approval Order estimated that there would be 107 members of the Class.  (Preliminary Approval Order at 7.)

1  adequate, and reasonable, and that it is in the best

2  interests of the members of the settlement class." (<u>See</u>

3  <u>Butler Decl., Ex A. at 2.</u>)

4

5  **B.   Fairness, Reasonableness, and Adequacy of the**

6  **Settlement**

7       **1.   The Settlement Agreement**

8       In determining whether or not the settlement is fair,

9  adequate, and reasonable, courts balance several factors,

10 including: (1) whether the proposed settlement appears to

11 be the product of serious, informed, non-collusive

12 negotiations; (2) the strength of the plaintiffs' case;

13 (3) the risk, expense, complexity, and likely duration of

14 further litigation; (4) the risk of maintaining class

15 action status throughout the trial; (5) the amount

16 offered in settlement; (6) the extent of discovery

17 completed, and the stage of the proceedings; (7) the

18 experience and views of counsel; (8) the presence of a

19 governmental participant;[6] and (9) the reaction of the

20 class members to the proposed settlement. <u>City of</u>

21 <u>Seattle</u>, 955 F.2d at 1291 (citing <u>Officers for Justice v.</u>

22 <u>Civil Serv. Comm'n of City & Cnty. of San Francisco</u>, 688

23 F.2d 615, 625 (9th Cir. 1982)); <u>In re Tableware Antitrust</u>

24 <u>Litig.</u>, 484 F. Supp. 2d at 1079 (citing <u>Manual for</u>

25 <u>Complex Litigation</u>, § 30.44 (2d ed. 1985)).   The court

26

27 _____

      [6]    As this factor is not present, the Court need

28 not address it.

                              10

1  need not consider all of these factors; rather, it must
2  only consider those factors that are designed to protect
3  absentees.  Molski v. Gleich, 318 F.3d 937, 953 (9th Cir.
4  2003) overruled on other grounds by Dukes v. Wal-Mart
5  Stores, Inc., 603 F.3d 571 (9th Cir. 2010).

6

7      This is "by no means an exhaustive list of relevant
8  considerations," though, and "[t]he relative degree of
9  importance to be attached to any particular factor will
10 depend on the unique circumstances of each case."
11 Officers for Justice v. Civil Serv. Com., 688 F.2d 615,
12 625 (9th Cir. 1982).  Accordingly, the Court only
13 addresses those factors it feels is relevant to ensure
14 the Settlement Agreement and its administration are fair,
15 reasonable, and adequate.

16

17     In evaluating a proposed settlement, "[i]t is the
18 settlement taken as a whole, rather than the individual
19 component parts, that must be examined for overall
20 fairness."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026
21 (9th Cir. 1998).  The Court "does not have the ability to
22 delete, modify, or substitute certain provisions," and
23 "[t]he settlement must stand or fall in its entirety."
24 Id.  The question is not whether the settlement "could be
25 prettier, smarter, or snazzier," but solely "whether it
26 is fair, adequate, and free from collusion."  Id. at
27 1027.

28

### a.   The Settlement Negotiations

As discussed in the Preliminary Approval Order, the Settlement Agreement was reached with the help of Lisa Klerman, a private mediator with experience in wage and hour class actions.  (Preliminary Approval Order at 14.) Settlements reached with the help of a mediator are likely non-collusive.  <u>Satchell v. Fed. Express Corp.</u>, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). The parties have presented no reason for the Court to reconsider its previous finding that this settlement was the product of arm's-length negotiations, and accordingly, the Court finds this factor weighs in favor of approval.

### b.   Strength of Plaintiffs' Case

In the Preliminary Approval Motion, Plaintiffs pointed out a number of possible factors that could complicate their theory of liability:

> (1) MMI may be able to produce written policies
> concerning rest and meal breaks in compliance
> with California law; (2) the inability of
> Plaintiffs to prove that MMI acted with the
> requisite scienter to justify statutory
> penalties; (3) the possibility of judicial

12

reduction of PAGA[7] penalties; (4) the collective
diminished effect on the class's recovery if no
civil penalties were levied; (5) the risk that
MMI would be able to defeat class certification
based on "variations in the experiences of
absent class members;" and (6) the risk that MMI
would seek smaller individual settlements and
releases before trial.

(Preliminary Approval Order at 14-15.)  Plaintiffs again
reiterate these concerns in the Final Approval Motion,
noting that "Plaintiffs can hope to recover no more than
$1,765,558.04 in unpaid wages for the class. The
settlement they achieved is about 30% of that amount. The
settlement amount, thus, represents a substantial
recovery for Settlement Class members in light of the
considerable risks that continued litigation would have
entailed."  (Final Approval Motion at 12 (internal
citation omitted).)

    As Plaintiffs reached a favorable settlement in light
of these risks to their case, this factor weighs in favor
of approval.

---

[7]    The Private Attorney General Act, Cal. Labor
Code §§ 2698-2699.

c.   **Risk, Expense, Complexity, and Likely**
**Duration of Further Litigation**

In light of the possible issues with the strength of Plaintiffs' case as discussed above, there was considerable risk in maintaining this action.  Moreover, Plaintiffs assert that during mediation MMI disclosed "it had always paid overtime wages on bonuses to putative class members, though this may not have been evident from the wage statements," and that many of their statutory claims may be adversely affected should MMI pay those benefits prior to trial.  (Final Approval Motion at 13.)

La Fleur and Campbell also previously indicated their unease with the possibility of having to pay fees and costs should they not prevail at trial and those fears have not diminished.  (Declaration of Aylin La Fleur ("La Fleur Decl." (Doc. No. 42-4)) at ¶ 13; Declaration of Michael Campbell ("Campbell Decl." (Doc. No. 42-5)) at ¶ 13.)

Accordingly, the Court finds that the risk and expense of this litigation to the parties favors approval of the settlement.

### d.   Risk of Maintaining Class Action Status Throughout Trial

The Court may revisit the certification of the class at any time before entry of final judgment.  <u>See</u> Fed. R. Civ. P. 23(c)(1)(C).  Where there is a risk that class certification might not be maintained before entry of final judgment, this factor favors approving the proposed settlement.

Here, MMI only stipulated to certification of the Class for purposes of settlement; should settlement not be approved, MMI may well oppose class certification. (<u>See</u> Settlement Agreement at III ("Should this Settlement not become effective for any reason, the fact that the Parties stipulated to certification of a Settlement Class in this Agreement shall have no bearing on and not be admissible on the question of whether a class should be certified in a non-settlement context and as to Defendant's liability for the claims alleged by Plaintiff, individually and on behalf of the Settlement Class, which liability Defendant expressly denies.").) Given the uncertainty regarding Plaintiffs' ability to maintain class certification throughout the case, this factor also favors approving the proposed settlement.

1                **e.   Amount Offered in Settlement**

2        The Settlement Agreement requires MMI to pay a total

3    settlement sum not to exceed $535,000.  (Settlement

4    Agreement at III.P, IX.A.)  As noted above, of the 124

5    identified class members, 86 valid claims were received,

6    or 69.35% of the possible settlement class.  (Butler

7    Decl. ¶ 11.)  Those 86 claims accounted for 79% of the

8    net settlement amount.  (Id. ¶ 12.)  The average payout

9    to class members is $3,065.56 and the highest payment to

10   any individual class member is $7,402.02.  Given the

11   risks and uncertainty attendant to this litigation as

12   previously discussed, the Court finds that the amount of

13   the settlement payments and the rate at which prospective

14   Class Members responded weighs in favor of the Settlement

15   Agreement's overall reasonableness.

16

17               **f.   Experience and Views of Counsel**

18       As noted above, the parties in this case believe this

19   settlement to be "fair, adequate, and reasonable, and

20   that it is in the best interests of the members of the

21   settlement class."  (See Butler Decl., Ex A. at 2.)

22   This, in conjunction with Class Counsel's experience

23   litigating wage and hour claims (see Spivak Preliminary

24   Decl. at ¶¶ 19-30; Declaration of Walter Haines in

25   Support of Motion for Preliminary Approval (Doc. No. 33-

26   4) at ¶¶ 1-3) persuades the Court that Class Counsel

27

28

1  believes the Settlement Agreement and subsequent payout
2  to be fair, reasonable, and adequate in this case.
3
4        **g.    The Reaction of Class Members to the**
5              **Proposed Settlement**
6        Again, as noted above, Class Counsel received no
7  objections or exclusion requests as to the proposed
8  Settlement Agreement, and 69.35% of the Class claimed 79%
9  of the net settlement amount for a total distribution of
10 $263.637.81. (Final Approval Motion at 7; Butler Decl. ¶¶
11 11-14.)  Thus, this factor weighs in favor of settlement.
12
13       As all of the above factors weigh in favor of final
14 approval, the Court finds the Settlement Agreement to be
15 fair, reasonable and adequate.
16
17       **2.    Attorney Fees, Costs, and Incentive Awards**
18       The Preliminary Approval Order approved allocation of
19 settlement funds for attorney's fees and actual
20 litigation costs, and incentive award payments.
21 (Preliminary Approval Order at 16-18 (citing Staton, 327
22 F.3d at 963 ("[T]o avoid abdicating its responsibility to
23 review the agreement for the protection of the class, a
24 district court must carefully assess the reasonableness
25 of a fee amount spelled out in a class action settlement
26 agreement.").)
27
28

1          **a.   Attorney's Fees and Costs**

2          The Settlement Agreement sets aside $133,750.00, or

3     25% of the settlement proceeds as attorney's fees.

4     (Final Approval Motion at 17-19;  Settlement Agreement at

5     XI.A.1.)  To calculate the reasonableness of an award of

6     attorney's fees, the Court may use either the percentage-

7     of-the-fund method[8] or the lodestar/multiplier method.[9]

8     In re Washington Pub. Power Supply Sys. Sec. Litig., 19

9     F.3d 1291, 1295 (9th Cir. 1994) ("[T]he district court

10    has discretion to use either method in common fund

11    cases.").  Regardless of the method used, "the district

12    court should be guided by the fundamental principle that

13    fee awards out of common funds be *reasonable under the*

14    *circumstances*."   In re Washington Pub. Power Supply Sys.

15    Sec. Litig., 19 F.3d at 1296 (quoting State of Florida v.

16    Dunne, 915 F.2d 542, 545 (9th Cir. 1990)).

17

18         Twenty-five percent, the amount requested by

19    Plaintiffs' counsel here, is the "'benchmark' award that

20    should be given in common fund cases."  Six Mexican

21

22    ─────────────────

23         [8]    Under the percentage-of-the-fund method, the
      court calculates the fee award by designating a
      percentage of the total common fund.  Six Mexican Workers
24    v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.
      1990).
25         [9]    Under the lodestar method, the court calculates
      the fee award by multiplying the number of hours
26    reasonably spent by a reasonable hourly rate and then
      enhancing that figure, if necessary to account for the
27    risks associated with representation.  Paul, Johnson,
      Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir.
28    1989).

1   <u>Workers</u>, 904 F.2d at 1311.  "The benchmark percentage

2   should be adjusted, or replaced by a lodestar

3   calculation, when special circumstances indicate that the

4   percentage recovery would be either too small or too

5   large in light of the hours devoted to the case or other

6   relevant factors."  <u>Id.</u>

7

8        The Court elects to use the percentage-of-the-fund

9   method to determine if the proposed attorney's fees are

10  reasonable.  As Class Counsel agree that 25% is

11  reasonable here, and there is no evidence that an award

12  of 25% would be a windfall to Plaintiffs' counsel (<u>see</u>

13  <u>Fischel v. Equitable Life Assur. Soc'y of U.S.</u>, 307 F.3d

14  997, 1007 (9th Cir. 2002)), the Court agrees that the

15  Settlement Agreement's attorney's fees request is

16  reasonable.

17

18       Moreover, assuming the Court used the lodestar

19  method, a review of the billing records submitted by

20  Class Counsel (<u>see</u> Declaration of David Spivak in Support

21  of Motion for Final Approval of Class Action Settlement

22  ("Final Spivak Decl." (Doc. No. 42-9) Ex. 19; Declaration

23  of Caroline Tahmassian (Doc. No. 42-3) Ex. A; Declaration

24  of Walter Haines (Doc. No. 42-2), Ex. A), shows that the

25  fees as calculated by the lodestar approach would also be

26  reasonable.

27

28

1   With respect to actual litigation costs, the
2  Settlement Agreement requests no more than $8,170.36 in
3  costs.  (Final Approval Motion at 19.)  Rule 23(h)
4  provides that the Court may award reasonable costs.  Fed.
5  R. Civ. P. 23(h).  The Court previously found that an
6  award of up to $10,000 in costs would be reasonable.
7  (Preliminary Approval Order at 17-18.)  Class Counsel has
8  provided an accounting of those costs.  (See Final Spivak
9  Decl. Ex. 20.)  The Court finds these costs to be
10  reasonable.

11

12         b.   Incentive Awards
13     "[N]amed plaintiffs, as opposed to designated class
14  members who are not named plaintiffs, are eligible for
15  reasonable incentive payments." Staton, 327 F.3d at 977.
16  Factors the court should consider when assessing whether
17  individual incentive payments are reasonable include: (1)
18  the actions the plaintiff has taken to protect the
19  interests of the class; (2) the degree to which the class
20  has benefitted from those actions; (3) the amount of time
21  and effort the plaintiff expended in pursuing the
22  litigation; and (4) and reasonable fears of workplace
23  retaliation.  Id.  Courts may also consider: the risk to
24  the class representative in commencing suit, both
25  financial and otherwise; the notoriety and personal
26  difficulties encountered by the class representative; the
27  amount of time and effort spent by the class
28

20

representative; the duration of the litigation; and the
personal benefit (or lack thereof) enjoyed by the class
representative as a result of the litigation.  <u>Van
Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299
(N.D. Cal. 1995).  "Courts have generally found that
$5,000 incentive payments are reasonable."  <u>Alberto v.
GMRI, Inc.</u>, 252 F.R.D. 652, 669 (E.D. Cal. 2008).

     At the hearing on the Preliminary Approval Motion,
the Court expressed its skepticism at the prospect of
awarding $15,000 to both of the named plaintiffs, Aylin
La Fleur and Michael Campbell for their participation.
The Court gave preliminary approval to the Settlement
Agreement with those incentive awards, though it noted
those awards might be lowered in the order giving final
approval to the settlement.  (Preliminary Approval Order
at 18.)

     Class Counsel dedicated no less than five pages of
the Final Approval Motion to this issue, explaining that
a $15,000 incentive award for each named plaintiff is
warranted in this instance for the following reasons: (1)
the named plaintiffs have released all claims against
MMI, unlike the remainder of the Class; (2) the
individual fiduciary responsibility that La Fleur and
Campbell took on behalf of other members of the Class;
(3) other class members may recover more than the named

plaintiffs; (4) La Fleur and Campbell alone assumed the risk of an adverse judgment against them; (5) Class Counsel relied heavily on the input of the named plaintiffs, including their presence at the mediation session that ultimately led to the terms of the Settlement Agreement; (6) the named plaintiffs have forfeited the right to receive all civil penalties under PAGA by agreeing to this settlement; (7) the small impact on each individual class member's recovery in order to set aside the incentive awards for the named plaintiffs. (Final Approval Motion at 19-26.)

In addition to the arguments in the Motion, La Fleur and Campbell also submitted new declarations in support of their $15,000 incentive payments. (See La Fleur Decl. at ¶¶ 3-9; Campbell Decl. at ¶¶ 3-14.)  In the declarations, La Fleur and Campbell mention that they fear their future job prospects in the veterinary industry may be harmed after being named as plaintiffs in this action. (See La Fleur Decl. at ¶ 15; Campbell Decl. at ¶ 15.)  Taking the arguments by Class Counsel and the supplemental declarations of the named plaintiffs into consideration, the Court agrees that the $15,000 incentive payments in the Settlement Agreement are reasonable under the circumstances.

**C.   Adequacy of the Notice Procedure**

Rule 23 requires the court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiff must provide notice to potential opt-in class members that is "timely, accurate, and informative."  See Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim forms must be informative and accurate.  Id. at 172; Churchill Village, L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

On January 27, 2014, the Court approved the proposed Notice for the Class.  (See Doc. No. 41.)  In its Preliminary Approval Order, the Court determined that the

1  proposed Notice and manner of class notice were adequate,
2  and the Court now evaluates whether the parties executed
3  class notice in accordance with the Court's Preliminary
4  Approval Order.
5
6      Class Counsel provided notice to the Class using the
7  form and process the Court preliminarily approved.  (See
8  Final Approval Motion at 7; Butler Decl. at ¶¶ 5-12.)  On
9  February 21, 2014, the Claims Administrator provided the
10  Class Notice and the Claim Form to the Class via first-
11  class mail.  (Butler Decl. at ¶ 8.)  No requests for
12  exclusion or objections were received, and 69.35% of the
13  Class claimed 79% of the net settlement amount for a
14  total distribution of $263.637.81.  (Id. at ¶¶ 13-14.)
15
16      Class Counsel complied with the notice requirements
17  of the Preliminary Approval Order.  The notice sent to
18  Class Members pursuant to the Preliminary Approval Order
19  was the best notice practicable under the circumstances
20  and provided sufficient notice to Class Members through
21  Class Counsel's reasonable effort.
22
23      The Court finds the Class Notice procedure was
24  reasonable as to the content and the method of
25  communication.  As the Court has found the settlement
26  terms to be fair, adequate, and reasonable, and because
27  the notice procedures were the best notice practicable
28

1  under the circumstances, the Court APPROVES the
2  Settlement.
3
4                      **IV. CONCLUSION**
5      After considering the foregoing factors, the Court
6  finds the Settlement Agreement is fundamentally fair,
7  reasonable, and adequate.  Accordingly, the Court:
8      (1) GRANTS the Motion for Final Approval;
9      (2) DISMISSES the action WITH PREJUDICE.  All Class
10         Members shall be bound by this Order.
11
12  **IT IS SO ORDERED.**
13
14
15  Dated:  June 25, 2014
                                    VIRGINIA A. PHILLIPS
16                          United States District Judge
17
18
19
20
21
22
23
24
25
26
27
28